UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| PRINCE F. TSETSE,<br><br>       Plaintiff,<br><br>  v.<br><br>ROBERT NEUSCHMID,<br><br>       Defendant. | Case No. 18-cv-01876-WHA<br><br>**ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS; DENYING CERTIFICATE OF APPEALABILITY** |

## INTRODUCTION

This is a federal habeas corpus action filed by a state prisoner pursuant to 28 U.S.C. § 2245. The operative petition in this action is the Second Amended Petition ("SAP") (ECF No. 45). Petitioner's claim of actual innocence was dismissed, and his claims of prosecutorial misconduct and that trial counsel was ineffective by not objecting to admitted evidence of three jailhouse telephone conversations between petitioner and his wife were subsequently denied (ECF No. 69). The United States Court of Appeals remanded the case to decide additional claims of ineffective assistance by trial counsel, as well as claims of insufficiency of evidence and cumulative error (ECF No. 73). Respondent filed a supplemental answer addressing these claims, and petitioner filed a supplemental traverse (ECF Nos. 81, 86). Petitioner thereafter filed a motion to "supplement" the "claims" in the SAP (ECF No. 87), which was granted (ECF No. 88). For the reasons stated below, petitioner's remaining claims, as supplemented, are **DENIED.**

## STATEMENT

The factual and procedural background was set forth in the prior order regarding the claims in the SAP as follows:

    **A. FACTUAL BACKGROUND**

        At 6:35 a.m. on April 5, 2014, a cyclist on the way home

found the dead body of Kimberley R. near a park in Oakland, California. Forensic analysis determined that she died of blunt force trauma to her head and that her brain had suffered numerous injuries. She also had bruises, abrasions, and injuries on her face, arms, legs, hands, and teeth. The pathologists testified that Kimberley died shortly after her injuries, and the prosecutor's pathologist testified the injuries were consistent with an assault whereas the defense pathologist testified they were consistent with a car accident.

Sperm that eventually matched petitioner's DNA was found in her vagina, and his DNA was also found on her clothing and in her fingernails. Near her body was a receipt that was traced back to petitioner, as well a[s] a sweatshirt that belonged to petitioner's child and had both blood and Kimberley's DNA on it. Kimberley's roommate testified that [petitioner] had been with her until approximately 2:00 a.m. that morning after a night out drinking, at which point she went to a bus stop and then later got into a truck that matched the description of petitioner's truck. Kimberley's blood was found on petitioner's shoe. In interviews with the police, petitioner initially denied knowing Kimberley, but after he was arrested, he admitted that he had given her a ride and dropped her off at approximately 12:30 or 1:00 a.m. on the morning she died. He added that she told him she had fallen out of a moving car, which caused her to bleed. At trial, petitioner testified that he in fact paid her to have sex with him after she got into his truck, and []he dropped her off at the park where her body was later found []at approximately 3:00 a.m. She said that her head hurt and she could not walk because of her earlier fall, and he offered to call an ambulance. He denied hurting her. The parties stipulated that Kimberley had posted an ad for erotic massage on the internet. Excerpts of phone calls petitioner made to his wife from the jail were played to the jury.

A witness walking by the park at approximately 5:55 a.m. testified for the defense that he did not notice a body, though it was still dark and there were no streetlights.

**B. PROCEDURAL BACKGROUND**

In November 2015, a jury in Alameda County Superior Court found petitioner guilty of first-degree murder committed during the course of a rape. The trial court sentenced petitioner to a term of life without the possibility of parole in state prison. The California Court of Appeal affirmed the judgment. The California Supreme Court denied a petition for review. After filing the instant federal petition, petitioner obtained a stay to exhaust additional claims. He then filed a habeas petition in the California Supreme Court. When that petition failed, petitioner filed his SAP in this case.

(ECF No. 69 at 1-2.)

//

# ANALYSIS

## A. STANDARD OF REVIEW

Pursuant to the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), a federal court may entertain a petition for writ of habeas corpus "in behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. 2254(a). The petition may not be granted with respect to any claim adjudicated on the merits in state court unless the state court's adjudication of the claim: "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. 2254(d).

"Under the 'contrary to' clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by [the United States Supreme] Court on a question of law or if the state court decides a case differently than [the] Court has on a set of materially indistinguishable facts." *Williams (Terry) v. Taylor*, 529 U.S. 362, 412–13 (2000). "Under the 'unreasonable application' clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from [the] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Id.* at 413. "[A] federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." *Id.* at 411. A federal habeas court making the "unreasonable application" inquiry should ask whether the state court's application of clearly established federal law was "objectively unreasonable." *Id.* at 409.

## B. CLAIMS FOR RELIEF

The Ninth Circuit ordered the following claims to be addressed:

> (1) ineffective assistance of trial counsel during pre-trial and trial proceedings, including but not limited to counsel's failure to (a) complete an investigation; (b) object to the State's expert witness's improper testimony; or (c) hire a DNA expert witness; (2) insufficient evidence to convict; and (3) cumulative error.

3

(ECF No. 73 at 1 (citing ECF No. 45 at 7-15, 23-25).)

1. INEFFECTIVE ASSISTANCE OF COUNSEL

a. PETITIONER'S CLAIMS

On the form petition used for the operative SAP, petitioner lists three claims. One of these claims asserts trial counsel was ineffective by not objecting "irrelevant hearsay statement[s]" by his wife in jailhouse telephone conversations with petitioner (ECF No. 45 at 5). This claim was denied (ECF No. 69 at 4-6), and the Ninth Circuit did not disturb that ruling in its remand order (ECF No. 73).

Pursuant to the Ninth Circuit's use of the phrase "including, but not limited to" (ECF No. 73 at 1), the SAP was carefully reviewed and, due to petitioner's pro se status, liberally construed in his favor. The following additional claims of ineffective assistance of counsel can reasonably be gleaned from such a review: (1) failing to conduct an investigation (ECF No. 45 at 7);[1] (2) failing to "utilize the DNA evidence" (*ibid.*); (3) failing to "seek the truth" of his "actual and factual innocence" (*ibid.*); (4) failing to object to "improper testimony" by the prosecutor's DNA expert (*ibid.*); (5) failing to consult or present an expert in DNA and blood evidence (*ibid.*); (6) failing to hire an "independent defense criminal analyst" (*id.* at 9); (7) failing to file a "motion for discovery" `(8) failing to "raise a substantial defense" (*ibid.*); (9) failing to object to "inadmissible evidence" (*ibid.*); (10) failing to impeach "key" prosecution witnesses (*ibid.*); (11) failing to request jury instructions on lesser-included offenses (*ibid.*); and (12) failing to call the victim's "attending physician" and "responding officers" as witnesses or seek discovery of the victim's medical records (*id.* at 13).

b. UNEXHAUSTED CLAIMS

An application for a federal writ of habeas corpus filed by a prisoner who is in state custody pursuant to a judgment of a state court may not be granted unless the prisoner has first exhausted state judicial remedies, either by way of a direct appeal or in collateral proceedings, by presenting the highest state court available with a fair opportunity to rule on the merits of each and

---

[1] In his "supplement," petitioner indicates this includes an investigation of "former counsels" (ECF No. 87 at 3).

4

every issue he or she seeks to raise in federal court. *See* 28 U.S.C. § 2254(b),(c); *Granberry v. Greer*, 481 U.S. 129, 133-34 (1987).

Petitioner twice sought relief from his conviction in the California Supreme Court, once on direct appeal and once in a petition for a writ of habeas corpus. In his direct appeal, he raised two claims of ineffective assistance of counsel, namely that counsel was ineffective in failing to object to (1) the admission of hearsay statements by petitioner's wife in a jail telephone calls, and (2) the prosecutor asking "hypothetical questions" of the DNA expert, the expert's response, and the admission of a chart regarding the DNA evidence (ECF No. 28-12 at 197-98, 203, 214-48; *see also id.* at 4-6, 26-79 (making same claims in the California Court of Appeal on direct appeal)). In his habeas petition, petitioner did not make any additional claims of ineffective assistance of counsel (ECF No. 63-3). Rather, he made claims of prosecutorial misconduct, actual and factual innocence, and cumulative error (ECF No. 63-3 at 10, 11, 105-08). The only reference to ineffective assistance of counsel in the 186-page petition is a reiteration of his claim on direct appeal that counsel was ineffective because he did not object to the prosecution's hypothetical questions to the DNA expert and the expert's testimony in response (*id.* at 150-51). In sum, the only two claims of ineffective assistance of counsel petitioner presented to the California Supreme Court are the claims he raised on direct appeal --- that counsel failed to object to the admission of statements by petitioner's wife in jail telephone calls and that counsel failed to object to the prosecutor's hypothetical question, the expert's response, and the admission of the DNA evidence chart. Accordingly, none of his other claims of ineffective assistance of counsel are exhausted.

In his traverse, petitioner makes several exhaustion arguments. First, he argues he exhausted all of the SAP's claims of ineffective assistance because he made them in his direct appeal to the California Court of Appeal (ECF No. 86 at 19-20). He did not. And even if he did, presenting claims to the California Court of Appeal did not exhaust them; to exhaust claims, petitioner had to present them to the California *Supreme Court*. Second, petitioner argues he raised "all of his ineffective assistance of counsel" claims "on habeas corpus in the state court" (ECF No. 86 at 41-45). Petitioner's only habeas petition in the state courts was his petition to the California Supreme Court. As explained above, this petition only made one brief argument of

5

ineffective assistance of counsel (ECF No. 63-3 at 150-51).  Petitioner does not cite the page(s) where he made any other claims of ineffective assistance of counsel, nor does a review of the petition turn up any other such claims.  Third, petitioner argues his "procedural default" should be "excused" because of ineffective assistance of appellate counsel (*id.* at 41-42).  Petitioner has not *procedurally defaulted* his ineffective assistance of counsel claims; he has failed to *exhaust* all but two of them.  There is no authority, moreover, that a petitioner's failure to exhaust may be excused by appellate counsel's ineffective assistance where, as here, the petitioner did not bring and exhaust in the state courts a claim that appellate counsel was ineffective.  *Cf. Arrendondo v. Neven*, 763 F.3d 1122, 1140 (9th Cir. 2014) (finding petitioner's failure to bring claim of ineffective assistance of appellate counsel in state courts with respect to unexhausted claim precludes consideration of that claim in federal habeas proceeding).  Accordingly, petitioner's exhaustion arguments are not persuasive.

The SAP, when liberally construed, presents both of petitioner's exhausted ineffective assistance of counsel claims.  As discussed above, the SAP makes the claim exhausted claim that trial counsel was ineffective by not objecting to the admission of statements by his wife (ECF No. 45 at 5), which claim was denied in a prior order (ECF No. 69 at 4-6).  The SAP's claim that trial counsel was ineffective in failing to object to the "improper testimony from the state's DNA expert" (ECF No. 45 at 7) is liberally construed to assert the petitioner's other exhausted claim of ineffective assistance of counsel, namely that counsel was ineffective in failing to object to the prosecutor's hypothetical questions of the DNA expert, the expert's response, and the admission of a chart regarding the expert's findings.  This claim is addressed on its merits, below.  The remaining claims of ineffective assistance of counsel are dismissed without prejudice for lack of exhaustion.

        c.    FAILING TO OBJECT TO EXAMINATION OF STATE'S DNA EXPERT

           i.    BACKGROUND

Two swabs were taken from the victim's right hand, one from the palm and one from the index finger area.  Both swabs contained the victim's DNA.  The prosecution's DNA expert, Helena Wong, prepared a report stating that Swab A also contained additional DNA material.  The

6

1  report found no "affirmative evidence" that there was more than one additional donor, and,
2  assuming only one additional donor, the additional DNA material on Swab A was not consistent
3  with petitioner's DNA.  The prosecutor asked Wong if she assumed there were two additional
4  donors, whether petitioner could have been one of them.  Wong testified yes.  As for Swab B,
5  Wong testified it had DNA material that was consistent with petitioner's DNA (as well as the
6  victim's).
7  The trial court admitted charts of the DNA evidence Wong collected from the victim's
8  hand right hand.  The charts identified the locations where Wong detected material consistent with
9  petitioner's DNA and where she did not.

### ii.   LEGAL STANDARD

Under *Strickland v. Washington*, 466 U.S. 668, 686 (1984), the claim of ineffective assistance of counsel must be evaluated using two prongs.  Under the first prong, "the defendant must show that counsel's representation fell below an objective standard of reasonableness." *Id*. at 688.  When assessing performance of defense counsel under this first prong, the reviewing court must be "highly deferential" and must not second-guess defense counsel's trial strategy.  *Id.* at 689.  Thus, the relevant inquiry is not what defense counsel could have done but rather whether the choices made by defense counsel were reasonable.  *Babbit v. Calderon*, 151 F.3d 1170, 1173 (9th Cir. 1998).  Under the second prong of the *Strickland* test, petitioner bears the highly demanding" and "heavy burden" of establishing actual prejudice.  *Williams v. Taylor*, 529 U.S. 362, 394 (2000).  Actual prejudice requires a showing that but for counsel's unprofessional errors, there is a reasonable probability the outcome of the trial would have been different.  *Strickland*, 466 U.S. at 694.  A reasonable probability is "a probability sufficient to undermine confidence in the outcome." *Ibid*.  Petitioner has the burden of "showing" both that counsel's performance was deficient, *Toomey v. Bunnell*, 898 F2d 741, 743 (9th Cir. 1990), and prejudicial, *Strickland*, 466 U.S. at 694.

### iii.   ANALYSIS

The California Court of Appeal reasonably applied the correct legal standard from *Stickland* to reach the conclusion that petitioner did not suffer prejudice from counsel's failure to

object to the prosecutor's hypothetical question, Wong's answer, and the DNA evidence chart.  As the state court explained, an objection by counsel to these matters would not have successful under California law (ECF No. 28-12 at 191 (citing *People v. Moore*, 51 Cal.4th 386, 419 (2011); *People v. Mills*, 48 Cal.4th 158, 207 (2010))).  This determination of state law is binding on a federal court deciding a federal habeas petition.  *See Bradshaw v. Richey*, 546 U.S. 74, 76 (2005).  Because any objection by counsel would have been overruled under California law, there is no reasonable probability the objection would have made a difference in the outcome of petitioner's trial.  For this reason, the Court of Appeal correctly concluded the failure to object was not prejudicial under *Strickland.*

There was no prejudice for a second reason as well.  In addition to Wong's testimony petitioner's DNA may have been on Swab A if there had been two additional donors, there was other evidence that petitioner's DNA was found on the victim's hands.  First, the other swab of petitioner's right hand (Swab B) had material consistent with petitioner's DNA.  Second, there was also undisputed evidence that petitioner's DNA was found on the victim's left hand (*see* ECF No. 28-12 at 191).  As the Court of Appeal reasonably explained, "[N]or was such evidence surprising in light of his testimony that they had sex on the night she was killed" (*id.* at 192).  As for the evidence on Swab A of DNA material from a third person (who may have killed the victim), there was no dispute that DNA material from a third person was found on both Swab A and in the victim's fingernails.  Thus, as the California Court of Appeal reasonably explained, exclusion of the evidence would not have prevented the defense from arguing that a third party whose DNA was on the victim's hand had killed her.  Because the prosecutor's question, Wong's response, and the DNA chart only produced evidence of petitioner's supplemental and redundant to the substantial other evidence of petitioner's DNA evidence on the victim's hands, trial counsel's failure to object did not have a reasonable likelihood of affecting the outcome of the trial.  According

As petitioner was not prejudiced under *Strickland* from this asserted deficiency by trial counsel, the state courts' denial of this claim was neither contrary to nor an unreasonable application of federal law.  Consequently, petitioner is not entitled to habeas relief on this claim.

### 2. INSUFFICIENCY OF EVIDENCE

Petitioner claims there was insufficient evidence to support his conviction for felony (rape) murder (ECF Nos. 45 at 12; 86 at 49-50). His related claim that he is actually innocent of killing the victim was previously dismissed (ECF No. 59).

This claim is procedurally defaulted from federal habeas review because petitioner presented it to the California Supreme Court in a habeas petition, which was summarily denied with a citation to *In re Lindley*, 29 Cal. 2d 709 (1947) (holding sufficiency of the evidence claims cannot be raised in a state habeas petition, but must be brought on direct appeal). As explained in a prior order (ECF No. 59), the *Lindley* rule is an adequate and independent state procedural rule, and when the California Supreme Court cites the rule in denying a sufficiency of evidence claim, the claim is procedurally defaulted from federal habeas review. *See Carter v. Giurbino*, 385 F.3d 1194, 1198 (9th Cir. 2004).

Petitioner argues the two exceptions to the procedural default doctrine apply to this claim --- cause and prejudice, and a "fundamental miscarriage of justice." *See Coleman v. Thompson*, 501 U.S. 722, 750 (1991). Petitioner made the same arguments in connection with his defaulted claim of prosecutorial misconduct, and the argument was rejected (*see* ECF Nos. 59 at 2-3; 69 at 6-7).

First, petitioner argues the "cause" for his procedural default was appellate counsel's failure to raise the claim of insufficiency of evidence on direct appeal. As explained previously (see ECF No. 69 at 7), the exhaustion doctrine "requires that a claim of ineffective assistance be presented to the state courts as an independent claim before it may be used to establish cause for a procedural default." *Murray v. Carrier*, 477 U.S 478, 488-89 (1986). Petitioner has not presented to the California Supreme Court a claim that appellate counsel was ineffective in failing to raise on direct appeal his claim of insufficiency of evidence. Accordingly, this claim of ineffective assistance of appellate counsel is unexhausted and cannot be the basis for finding cause for petitioner procedurally defaulting his claim of insufficiency of evidence.

Second, petitioner argues his procedural default should be excused because there would be

9

a miscarriage of justice insofar as he is "actually innocent" of the murder charges. If a state prisoner cannot meet the cause and prejudice standard, a federal court may still hear the merits of the procedurally defaulted claims if the failure to hear the claims would constitute a "miscarriage of justice." *McQuiggin v. Perkins*, 569 U.S. 383, 391-92 (2013). A showing of "actual innocence" satisfies the "miscarriage of justice" exception to procedural default. *See Schlup v. Delo*, 513 U.S. 298, 327 (1995). To create a colorable claim of actual innocence, a petitioner must show evidence he is innocent of the charge for which he is incarcerated, as opposed to legal innocence as a result of legal error. *Id*. at 321. He must show "new reliable evidence—whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence— that was not presented at trial." *Id*. at 324. This evidence must show more than reasonable doubt; it must show "it is more likely than not that no 'reasonable juror' would have convicted him." *Id*. at 329.

Petitioner's actual innocence arguments, which he reiterates here, were previously rejected as follows:

> Here, the evidence of petitioner's innocence is not persuasive. First, his claim of innocence rests entirely on his credibility, which at trial proved to be minimal. His account kept changing as he was presented with more and more incriminating evidence. At first, he claimed not to have known Kimberley, but once the receipt and sweatshirt found near her were traced to him and blood was found in his truck, he admitted to being with her in the hours before she died. Then, when his DNA evidence was found on her vagina, clothes, and fingernails, he admitted that also had sex with her before she died. Second, his sworn testimony about the evening was inconsistent. He also claimed that they had sex despite also claiming that she also had been so injured that he offered to call an ambulance, could hardly walk, was bleeding, and soon thereafter died. Third, his account had unexplained holes, such why his receipt and sweatshirt were near her body if in fact she had walked away from the truck after they had sex (as he claimed), and how she could have done so if her injuries had made her hardly able to walk. Fourth, petitioner has presented no new evidence, let alone any new evidence that indicates he is, in fact, innocent.

(ECF No. 69 at 8.) For these same reasons, petitioner's repeated arguments are rejected here, and he does not present any new persuasive arguments showing he was actually innocent of the murder charge or that procedurally defaulting his claim of insufficient evidence would result in a miscarriage of justice.

1    Petitioner is not entitled to habeas relief on his claim that there was insufficient evidence to support his conviction because this claim is procedurally defaulted, and no exception to the procedural default applies.

3.   CUMULATIVE ERROR

Petitioner claims the cumulative effect of multiple trial errors rendered the trial fundamentally unfair, in violation of his right to due process (ECF No. 45 at 6, 8, 22). "Under traditional due process principles, cumulative error warrants habeas relief only where the errors have so infected the trial with unfairness as to make the resulting conviction a denial of due process." *Parle v. Runnels*, 505 F.3d 922, 927 (9th Cir. 2017) (internal quotation marks omitted).

Petitioner exhausted this claim on direct appeal based on the two claims of ineffective assistance of counsel that he also raised on direct appeal. In the instant petition, however, petitioner bases his cumulative error claim upon many additional asserted trial errors, including additional claims of ineffective assistance of counsel and prosecutorial misconduct (*see*, *e.g.*, ECF No. 45 at 6, 8, 22.). These additional errors were not part of the exhausted cumulative error claim, however. Because these additional errors were not raised on direct appeal, they were not part of the cumulative error claim he presented to the California Supreme Court. Only the exhausted cumulative error claim may be considered here, i.e. the claim that there was cumulative error based upon the two claims of ineffective assistance of counsel that petitioner raised on direct appeal.

For the reasons explained above and in the prior order (ECF No. 69), both of these claims of ineffective assistance of counsel claims are without merit. Where there is no constitutional error, nothing can accumulate to the level of a constitutional violation. *See Hayes v. Ayers*, 632 F.3d 500, 524 (9th Cir. 2011). Consequently, the state court's denial of petitioner's claim of cumulative error was neither contrary to nor an unreasonable application of federal law, and habeas relief is not warranted based upon this claim.

**CONCLUSION**

For the foregoing reasons, the petition for a writ of habeas corpus is **DENIED**. Petitioner's unexhausted claim, described above, are dismissed without prejudice to refiling them in a new

11

case after he has exhausted them.

A certificate of appealability will not issue because reasonable jurists would not "find the district court's assessment of the constitutional claims debatable or wrong." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). Petitioner may seek a certificate of appealability from the United States Court of Appeals.

The clerk shall enter judgment, terminate all pending motions, and close the file.

**IT IS SO ORDERED.**

Dated: December 8, 2025

WILLIAM ALSUP
United States District Judge